**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

FLOYD D. BOATRIGHT and
VIRGINIA BOATRIGHT, his wife,

    Plaintiffs,

vs.                     Case No. 3:09-cv-946-J-32MCR

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, etc.,

    Defendant.

## ORDER

A dog jumps from a car parked in a driveway, frightening the plaintiff, causing him to fall backwards and suffer injuries. Under Florida insurance law, does the plaintiff's uninsured motorist policy provide coverage for plaintiff's injuries?

This removal case is before the Court on the parties' amended cross-motions for summary judgment (Docs. 26 & 30). Responses and exhibits have been filed by both sides. See Docs. 1, 10, 11, 12, 15, 16, 27, 30, 32. The Court held oral argument on the motions on April 26, 2010, the record of which is incorporated by reference. See Minutes, Doc. 33.

**I. Background Facts**

The following facts are essentially undisputed for purposes of the cross-motions. On September 19, 2008, 70 year old plaintiff Floyd Boatright drove his pickup truck and trailer to a residence on Crooked River Drive in Jacksonville to see if the homeowner wanted Boatright to cut her lawn. Boatright left his pickup running while the homeowner explained to him that she did not want her yard cut until later that week. Boatright then saw another

neighborhood resident back his vehicle into his driveway.  Boatright, who had mowed that home's lawn once or twice before, walked toward the home to ask the driver whether he wanted his lawn mowed.  According to Boatright, as the driver, Kevin Long, opened the door of the vehicle to get out, Long's dog "lunged" from the open door of the vehicle and in the direction of Boatright, causing Boatright to step back, whereupon he lost his footing and fell, hitting his head on the pavement, causing serious injuries.[1]

At the time of Mr. Boatright's accident, the Boatrights had two auto insurance policies through State Farm, one insuring Mr. Boatright's pickup truck and a second policy on a Lincoln Town Car.  The policies have identical coverage and provide uninsured motorist ("UM") benefits of up to $100,000 per person.  (The policies are of record at Doc. 11).

The relevant policy provision states:

> We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle.  The bodily injury must be sustained by an insured and must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.[2]

Policy (Doc. 11) at Section III.

---

[1] There is a dispute as to whether the driver and dog were just getting out of the vehicle or were already walking toward the home when Boatright approached.  State Farm has agreed to assume for purposes of these motions that Boatright's version (that they were just getting out of the vehicle) is true.

[2] Although Long said that his vehicle was insured, he testified that the coverage in effect at the time was probably only the minimum required by law.  See Doc. 27, Attachment 4, at Tr. 35-36, 43-44.  The State Farm policy defines an Uninsured Motor Vehicle as one which is not insured as well as one where the limits of the policy are less than the bodily injury damages sustained by the insured.  See Policy (Doc. 11) at Section III.  Long was apparently renting the home where the injury occurred and had no homeowner's or renter's insurance (which might have provided another source of recovery).

2

**II.     Standard of Review and Applicable Principles of Law**

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The burden of demonstrating the satisfaction of this standard lies with the movant, who must present 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' that establish the absence of any genuine, material factual dispute." Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1252-53 (11th Cir. 2003) (citing Fed. R. Civ. P. 56(c)). "The principles governing summary judgment do not change when the parties file cross-motions for summary judgment." T-Mobile South LLC v. City of Jacksonville, Fla., 564 F. Supp. 2d 1337, 1340 (M.D. Fla. 2008). Upon review of cross-motions, "the Court must determine whether either party deserves judgment as a matter of law on the undisputed facts." Id.

The parties agree that Florida law governs the interpretation of the insurance policies at issue. Under Florida law, "[w]hen assessing an insurance dispute, the insured has the burden of proving that a claim against it is covered by the policy, and the insurer has the burden of proving an exclusion to coverage." Key Custom Homes, Inc. v. Mid-Continent Cas. Co., 450 F. Supp. 2d 1311, 1316 (M.D. Fla. 2006) (citations omitted). "[I]n construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." United States Fire Ins. Co. v. J.S.U.B., Inc., 979 So. 2d 871, 877 (Fla. 2007). Moreover, while "ambiguous provisions are construed in favor of coverage, to allow for such a construction the provision must actually be ambiguous." Taurus Holdings, Inc. v. United States Fidelity & Guaranty Co., 913 So. 2d 528,

3

532 (Fla. 2005). Thus, "if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." Id. (citations and quotations omitted).

**III.    Discussion**

The only issue before the Court is whether this was an accident "arising out of the operation, maintenance or use of an uninsured motor vehicle."[3] State Farm claims that the mere transportation of the dog in the vehicle before the event in question does not mean that Boatright's accident "arose out of" the use of Long's vehicle. The Boatrights contend that Long's purpose in taking the trip was either to bring the dog to his home or to take the dog to a park (and return); therefore the journey's purpose involved the dog and, because the dog "lunged" at Boatright from the vehicle, Florida law supports a finding that the accident arose out of the use of the uninsured motor vehicle.

In Race v. Nationwide Mutual Fire Insurance, the Florida Supreme Court discussed what is meant by an accident "arising out of the use of a motor vehicle" within the context of an uninsured motor vehicle policy. 542 So. 2d 347 (Fla. 1989). In Race, the Florida Supreme Court declined to employ the more "liberal" coverage standard used to determine coverage under a personal injury protection policy. Id. at 349. Rather, the Court explained that a court should examine the issue as if it were applying a tortfeasor's automobile liability

---

[3]This Court has previously held that this language in auto policies is not ambiguous and should be construed by the Court as a matter of law. See Allstate Ins. Co. v. Safer, 317 F. Supp. 2d 1345, 1350 (M.D. Fla. 2004). See also, Taurus Holdings, 913 So. 2d at 532-37, 539-40 (examining the phrase "arising out of" as used in various contexts including auto policies and holding that the phrase was unambiguous in the context of the CGL insurance policy before the Court).

policy (which is what uninsured motorist coverage steps in to replace) - - in such cases, the insured must show that the nexus between the injury and the motor vehicle is not "too tenuous." Id. at 351.

In Race, an uninsured motorist (UM) assaulted Race (the insured) because the UM thought Race was about to draw a gun several minutes after the UM's negligence caused a minor traffic accident between their two vehicles. Id. at 347. In holding that Race's UM auto policy did not provide coverage for Race's injuries, the Florida Supreme Court explained that "[t]he most that can be said is that the driving of the uninsured motorist which caused the accident created an atmosphere of hostility between the parties." Id. at 351. Continuing, the Court explained that the driving of the UM "had nothing to do with Race's injuries, which only came about several minutes later when [the UM] thought Race was reaching for a gun." Id.

In determining the appropriate standard for addressing "arising out of" in auto liability policies, the Florida Supreme Court discussed an Appleman treatise on insurance, noting Appleman's "three rather interesting rules"[4]: "1) [t]he accident must have arisen out of the inherent nature of the automobile, as such; 2) [t]he accident must have arisen within the natural territorial limits of an automobile, and the actual use, loading, or unloading must not have terminated; [and] 3) [t]he automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury." Race, 542 So. 2d at 349 (citing 6B J. Appleman, Insurance Law and Practice, section 4317 (Buckley ed. 1979)).

---

[4]Appleman's rules are now called "the Race test" by some courts, although the Florida Supreme Court in Race did not clearly adopt this as Florida's test for UM coverage.

5

The Florida Supreme Court in Race then discussed several "pertinent cases," including a Florida appellate decision, Watson v. Watson, which the Race court found to be an opinion which "squarely addressed this issue," quoting as follows:

> In order for liability coverage [and therefore UM coverage] to exist, the incident must arise out of the ownership, maintenance or use of the car. The term "arising out of" has been interpreted to mean "originating from," "growing out of," or "flowing from." This does not require a showing of proximate cause between the accident and the use of the car, but there must be a causal connection or relation between the two for liability to exist.

Race, 542 So. 2d at 350 (quoting Watson v. Watson, 326 So. 2d 48, 49 (Fla. 2d DCA 1976) (internal citation omitted). Using these guideposts, the Florida Supreme Court considered the facts of the case before it in ruling that there was no UM coverage because "[c]learly, the connection between [the insured's] injury and [the UM's] motor vehicle was too tenuous to provide UM coverage." Race, 342 So. 2d at 351.

Cases before and after Race have struggled to find the line separating situations arising out of the use of a motor vehicle from those that fall short. A review of those cases reveals that the auto must be more than just the situs of the injury. As summed up more recently by the Florida Supreme Court in Taurus Holdings:

> 'The term 'arising out of' is broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to,' or 'having a connection with.'' As we implied in Race, this requires more than a mere coincidence between the conduct . . . and the injury. It requires 'some causal connection, or relationship.' But it does not require proximate cause.

Taurus Holdings, 913 So. 2d at 539-40 (citations omitted).

6

At oral argument, the Court explored with the parties the boundaries of "arising out of," discussing at length the relevant case law and numerous hypotheticals to try to establish where the line should be drawn on the facts of this case. The best cases for the Boatrights' position are National Indemnity Co. v. Corbo, 248 So. 2d 238 (Fla. 3rd DCA 1971) and Carpenter v. Sapp, 569 So. 2d 1291 (Fla. 2d DCA 1990), both of which the Court finds distinguishable- - Corbo, because the dog bit the passenger while both were in the vehicle in the course of a trip (the sole purpose of which was to bring the guard dog to his nightly duty station); and Carpenter, because the driver of the uninsured motor vehicle caused an accident which set in motion the unusual chain of events that led to the insured's injuries.[5] Here, unlike Carpenter, there was no motor vehicle accident and, unlike Corbo, Mr. Boatright was never in the vehicle. Moreover, the trip was over by the time the dog jumped out of the car and ran across the yard toward Mr. Boatright (thus to the extent the purpose of the trip had been to transport the dog, that purpose had ended[6]).

Cases such as American States Insurance Co. v. Allstate Insurance Co., 484 So. 2d 1363 (Fla. 5th DCA 1986), where an automobile liability policy was found not to cover injuries from the dog bite of a passenger who walked by the open window of a pickup truck, Underwriters Guarantee Insurance Co. v. Therrien, 640 So. 2d 234 (Fla. 4th DCA 1994) (whose facts are similar to American States), and Race itself (discussed above) are more

---

[5] The accident caused damage to a trailer carrying bulls, freeing the bulls who then caused injury to an adjacent homeowner. 596 So. 2d at 1292.

[6] The Court is unsure how important "the purpose of the trip" is in the coverage analysis but because this trip had ended, its purpose is not relevant at all (and the Court therefore need not decide the admissibility of the evidence bearing on the purpose of the trip).

7

analogous to the facts of this case. In American States, the court explained that the motor vehicle was "merely the situs of an injury that could have happened anywhere," which was insufficient to find the injuries "arose out of" the use of a motor vehicle. American States, 484 So. 2d at 1364. Likewise, in Therrien, the court found the auto policy did not provide coverage to the insured who approached a car window and was bitten by a dog inside the car because the "use of [the vehicle] was only incidental" to the insured's injuries and thus, "while the incident may have occurred in the vehicle, it did not arise out of the use of the vehicle." Therrien, 640 So. 2d at 236. Similarly, in Race, the Florida Supreme Court found the connection between the motor vehicle and the insured's injuries was "too tenuous." Race, 342 So. 2d at 351.

As in these cases and numerous others where the courts have found the facts fail to demonstrate that an accident "arose out of" the use of a motor vehicle, here too, the Court finds as a matter of law that Mr. Boatright's injuries did not arise out of the operation, maintenance or use of an uninsured motor vehicle. The connection between Mr. Boatright's injuries and the motor vehicle was "too tenuous," the dog's connection to the vehicle was just "mere coincidence," and the car trip was over at the time of the accident. Thus, while this accident and Mr. Boatright's injuries are surely regrettable, the UM policy with State Farm cannot be held to provide coverage.

Accordingly, it is hereby

**ORDERED**:

1.     Defendant State Farm Mutual Automobile Insurance Company's Amended Motion for Summary Judgment (Doc. 26) is **GRANTED**.

2. Plaintiffs Floyd and Virginia Boatright's Amended Cross-Motion for Summary Judgment (Doc. 30) is **DENIED**.

3. All other motions are terminated as moot; the Clerk shall enter judgment accordingly and close the file.

**DONE AND ORDERED** at Jacksonville, Florida this 2nd day of June, 2010.

TIMOTHY J. CORRIGAN
United States District Judge

s.
Copies:

counsel of record